JUDGE FORREST

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

15 CV 01544

ANTHONY BERNATO,

Plaintiff,

*-against-*

ARTHUR J. GALLAGHER & CO.

Defendant.

Civil Action No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Date: March 2, 2015

RECEIVED MAR 03 2015 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, ANTHONY BERNATO ("Bernato"), through his undersigned counsel, as and for his complaint against the above-captioned Defendant, sues ARTHUR J. GALLAGHER & CO. ("Gallagher"). Gallagher is the successor corporation to Hagedorn & Co. ("Hagedorn"), who employed Bernato at all times relevant.

## PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover the losses suffered by Bernato due to the actions of Defendant, of at least $1.5 million, including but not limited to: actual damages in the form of unpaid wages totaling $480,000, liquidated damages of $480,000, actual damages in the amount of $600,000, and special and punitive damages of $500,000, in addition to reasonable attorneys fees and costs.

2. In November of 2008, Bernato, a successful insurance broker, accepted an offer of employment at Hagedorn & Co., an insurance company.

3. During his first months of employment, while he was training on Hagedorn's systems, he worked in excess of 40 hours per week, for which he was uncompensated.

4. At no time did Bernato supervise others.

5. Hagedorn made representations regarding its ability to handle accounts to Bernato. Acting upon those representations, Bernato successful solicited and obtained large accounts for Hagedorn, such as New York Times, Moody's, Time Warner, McAndrew Forbes.

6. Hagedorn then realize the accounts were too large for them to handle and promptly rejected them, ruining Bernato's representation in the field of insurance brokerage.

7. Hagedorn then began assigning further accounts obtained by Bernato to other producers, depriving him of commissions he rightly earned.

8. When asked about this, Hagedorn, through its managers and directors, kept delaying payment of commissions owed to Bernato.

9. When any employer wrongfully withholds wages, "an employee may sue to recover the wages, as well as (1) prejudgment interest; (2) reasonable attorney's fees; (3) costs of the suit; and (4) liquidated damages of [100%] of the withheld wages, if the employer willfully withheld the wages."[1]

10. Defendant willfully withheld Bernato's commissions that were due to him under the terms of his employment. They repeatedly changed the terms of his employment verbally, saying that commission payments he was owed on his accounts would be coming in a lump sum after the sale to Gallagher was complete.

11. When Bernato made a complaint and demand for his unpaid commissions, he was terminated.

---

[1] *Ho v. Target Contsr. of N.Y. Corp.*, 2011 U.S. Dist. LEXIS 33365, *43-*44 (E.D.N.Y. Mar. 28, 2011); *see also* N.Y. Lab. L. § 198(1)(a).

12. Defendant also interfered with his efforts to find work elsewhere – including calling his current employer.

13. Hagedorn's failure to pay overtime for hours worked in excess of 40 hours, and as such is liable under New York Labor Law.

14. Further, these actions are NYLL retaliation, as well as tortuous interference with contract and advantageous business relations and prima facie tort under New York law.

15. Bernato also sues the above-captioned Defendant for retaliatory termination in violation of § 215(1)(a) of the NYLL, as well as for wrongful termination under §740 of the NYLL, Tortious Interference with Bernato's Business Relationships and Prima Facie Tort, under New York law. Bernato alleges the following:

## PARTIES

16. Bernato is a New York resident who began working for Defendant within the meaning of NYLL in 2008.

17. On September 17, 2014 Hagedorn was acquired by Arthur J. Gallagher & Co.

18. Defendant ARTHUR J. GALLAGHER & CO. is a domestic for-profit corporation Illinois corporation with a principal address of Two Pierce Place, Itasca, IL 60143.

## JURISDICTION AND VENUE

19. Pursuant to 28 U.S.C. §§1332, this court has jurisdiction because there is complete diversity between the parties and the recovery sought exceeds $75,000. Pursuant to 28 U.S. C. §1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under the NYLL.

20. Pursuant to 28 U.S.C. §1391(a), venue is proper in this district because a substantial part of the events giving rise to this action occurred in this district.

**STATEMENT OF FACTS**

21. On October 23, 2008 Defendant Hagedorn transmitted an offer of employment to Mr. Bernato for the position of sales producer, carrying with it the title of "Director."

22. Bernato's was offered compensation at the rate of $75,000 annually, with a goal for new business set at $107,000. This figure would "validate" Mr. Bernato's salary, and all monies earned above that would contribute to his commission at the rate of 70% for the first year.

23. One of the reasons Bernato was brought in was to bring large accounts to Hagedorn, who promised that they would be able to handle those accounts. Mr. Bernato used his significant skill to bring in accounts such as the New York Times, Moody's, McAndrews and Forbes, Time Warner.

24. In mid 2009, Hagedorn said that it could not accept these accounts because they were too big. Thus, they were forced to turn the accounts down, causing severe damage to Bernato's reputation in the insurance brokerage business.

25. In 2009, Hagedorn began to adopt a policy of taking accounts that Bernato had secured for the company, and giving them to other producers to manage. This policy was primarily put into place by Ken Sciarra and Dan Gabel. Mr. Bernato continued working to bring in new accounts, and these accounts and their commissions continued going to other producers at Hagedorn.

26. The degree to which Bernato was working for the other members with no benefit to himself was lampooned when a depiction of a black slave picking cotton was placed

outside Bernato's office – with the caption "black pickers and white cotton." Bernato found this highly offensive, asked for its removal, and was denied.

27. Despite repeated demands for his compensation in the form of commissions, Bernato was told only that he would receive his compensation once the sale to Gallagher was complete.

28. On August 26, after months and months of frustration and fruitless search for his compensation, Bernato transmitted a letter of demand to the CEO of Hagedorn, with a copy to the company's legal counsel and President, where he demanded his justly earned compensation.

29. After receipt of same, he was called into a meeting with Sciarra, who said that he would be compensated as soon as the sale to Gallagher was complete.

30. On September 10, fourteen days after demanding his compensation, Bernato arrived at his office to find it locked, and was then immediately met by a security guard who escorted him from the building.

31. Bernato was terminated without cause.

32. Bernato received his personal effects approximately three weeks later in boxes.

33. Bernato is entitled to his owed and unpaid commissions, his reasonable attorney's fees, prejudgment interest, and an additional amount equal to 100% of the amount due to him as liquidated damages.[2]

## Count I
## Fraudulent Misrepresentation
## Inducing Bernato to accept Employment

34. Bernato-alleges paragraphs 1-31 as if fully stated here.

[2] N.Y. Lab. L § 198.1-a

35. Bernato accepted employment with Hagedorn because of the specific compensation package that was offered.

36. Bernato knew that he had significant skills that would enable him to bring large accounts into Hagedorn, which would lead to huge commissions for him.

37. Hagedorn fraudulently misrepresented that they could handle accounts that Bernato would bring in, inducing him to begin to reach out to companies and solicit their business.

38. As soon as it became apparent that Bernato actually could produce the huge accounts that he claimed, Hagedorn realized that they did not have the infrastructure necessary to handle the types of accounts that Bernato promised, and was delivering on.

39. Bernato used significant reputational capital by reaching out to huge accounts such as the New York Times, and was hugely embarrassed when he was unable to deliver on accounts.

40. If Bernato had known that Hagedorn could not deliver on their promises to manage the accounts that Bernato knew he could bring in, he likely would have revised, and possibly retracted, his offer to work with them; thus, he relied on their promises to his detriment.

**Count II**
**Retaliation in Violation of N.Y. Lab. L. § 215**

41. Bernato re-alleges paragraphs 1-31 as if fully stated here.

42. At all relevant times, Defendant employed Bernato within the meaning of the NYLL.

43. Pursuant to the NYLL, it is unlawful for an employer to "discharge threaten, penalize, or in any other manner discriminate against or retaliate against an employee (1)

because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith believes, violates any provision" of the NYLL. See NYLL § 215(1)(a).

44. Bernato participated in protected activity by making complaints to Defendant (his employer) regarding owed commissions and Defendant' illegal pay practices.

45. Defendant committed adverse employment actions against Bernato by terminating him without cause on September 10, 2014

46. Bernato's protected activity was the "but for" causation of Defendant' adverse employment actions.

47. In the alternative, Bernato's protected activity was a motivating factor in Defendant' adverse employment actions.

48. Finally, after retaining an attorney and demanding compensation from his former employer, Sciarra produced a purported release that Mr. Bernato had signed. This release was dated 15 days after Mr. Bernato made a demand from his employers of $1.5 million.

49. Bernato alleges the signature on the document is not his – is forged, fraudulent, ineffective, and further evidence of the bad faith and retaliatory intent of Defendant.

50. The foregoing conduct, as alleged, constitutes a willful violation of the NYLL.

51. Due to Defendant' NYLL violations, Bernato has suffered damages and is entitled to recover from Defendant, without limitation, the payment of wages lost, an additional equal amount as liquidated damages of not more than $10,000, front pay, compensatory damages, and reasonable attorneys' fees and costs, pursuant to NYLL § 215(2)(a).

**Count III**
**Breach of Contract**

52. Bernato re-alleges paragraphs 1-31 as if fully stated here.

53. Bernato and Defendant entered into a valid employment contract, whereby Bernato would work for Defendant as an insurance broker.

54. For compensation, Defendant would pay Bernato the agreed upon wages and commissions, under the agreement. Bernato would be paid on a draw, validating his salary when he earned $107,000 in commissions, and then earning 70%, 50%, and 35% in the first, second and third years, respectively, of any commissions over $107,000.

55. Bernato accepted the agreement and began working at Hagedorn in November of 2008.

56. Defendant continued to represent that they would pay Bernato in a "lump sum" once the sale of Hagedorn to Gallagher was finalized. Bernato began demanding the commissions in May of 2014, and sent a demand letter in August of 2014.

57. Defendant materially breached this contract when they continuously refused to pay Bernato the commissions that he was owed.

58. Defendant have still not tendered the owed commissions despite Bernato's complaints and demands

59. When Mr. Bernato demanded his owed commissions, he was told by the Sciarra that they did indeed owe him the commissions, and that he should wait until the completion of the sale to Gallagher.

60. Defendant' actions have caused Bernato severe economic damages in the amount of these earned but unpaid commissions. This breach of contract also reasonably caused

Bernato to obtain the services of an attorney to pursue this action for his unpaid commissions.

61. As a result, Bernato is entitled to his owed unpaid commissions, and in addition, his reasonable attorney's fees and costs necessary to obtain his unpaid wages, and any other relief, legal or equitable, deemed just by the Court.

**Count IV**
**Unjust Enrichment**

62. Bernato re-alleges paragraphs 1-31 as if fully stated here.

63. The elements for unjust enrichment in New York are that (1) defendant was enriched (2) at the plaintiff's expense, and (3) that equity and good conscience militate against permitting defendant to retain what plaintiff seeks to recover.[3]

64. Defendant were enriched by Bernato providing insurance brokerage services for them.

65. Defendant' enrichment was at Bernato's expense, as he should have been paid all commissions due to him under the agreement.

66. Defendant' acceptance and retention of the benefit of Bernato's skill and ability to bring in business and clients, without providing Bernato the value of the benefit, would be inequitable under the circumstances, as Defendant represented that Bernato would receive all commissions due him. However, Defendant now refuse to pay the total of Bernato's commissions.

67. Thus, equity and good conscience militate against permitting defendant to retain what Bernato seeks to recover because Bernato worked at the direction of the Defendant, but he did not receive all compensation due.

---

[3] *Grynberg v. EniS.p.A.*, 503 Fed. Appx. 42, 43 (2d Cir. 2012).

68. Bernato demands monetary damages against Defendant for unjust enrichment and such other relief this Court deems just and proper.

**Count V**
**Tortious Interference with Contract and Advantageous Business Relations**

69. Bernato re-alleges paragraphs 1-31 as if fully stated here.

70. Bernato has a valid employment contract with his current employer, GFI Insurance Brokerage

71. Defendant knew that Bernato was employed at GFI, as they contacted them after Bernato began working there and attempted to convince them to fire Bernato.

72. Bernato suffered damage to his reputation at his new employer.

**Count VI**
**Prima Facie Tort**

73. Bernato re-alleges paragraphs 1-31 as if fully stated here.

74. A plaintiff may maintain a cause of action in New York for prima facie tort by showing (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful.[4]

75. Defendant intentionally inflicted harm on Bernato by punishing him for complaining about not getting paid; and interfering with his employment elsewhere.

76. Defendant had no excuse or justification for their conduct, because Bernato's actions were lawful and protected by NYLL.

---

[4] *McKenzie v. Dow Jones & Co.*, 335 Fed. Appx. 533, 536 (2d Cir. 2009) (quoting *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.2d 153, 162 (2d Cir. 1996)).

77. Defendant' actions were motivated solely by malice towards Bernato based on his willingness to stand up for his rights to paid for his work.

78. This conduct has resulted in special damages in the form of lost wages due to Bernato's termination, as well as Bernato's personal financial difficulties due to Defendant' failure to timely pay Bernato.

79. Defendant' choice to fire Bernato is an act that would otherwise be lawful had Bernato not stood up for his rights. But because Defendant' actions were motivated solely by malice, Defendant' have committed a prima facie tort.

80. Bernato is entitled to special damages, the amount to be proven at trial.

**Count VII**
**Unpaid Overtime Wages Under NYLL**

81. During the first two months of his employment, Bernato worked from 9AM to 9PM, totaling 60 hours per week.

82. During the period January 2009 to January 2010, Bernato worked between 40 and 50 hours a week, for an average workweek of 45 hours.

83. At no time did Bernato have any management responsibilities – he was purely a production employee, engaged in sales.

84. As a result, Bernato is owed overtime compensation for his work in excess of 40 hours per week during the period November 2008 to January 2010.

**PRAYER FOR RELIEF**

**81. WHEREFORE**, Bernato prays for the following relief:

a. An order enjoining Defendant from any further violations of NYLL;

b. An order of Judgment for owed wages, liquidated damages, and Bernato's reasonable attorney's fees and costs, and pre- and post-judgment interest pursuant to the NYLL § 633;

c. An order of Judgment for front pay, and an additional amount as liquidated damages of not more than $10,000, plus Bernato's reasonable attorney's fees and costs, for Defendant' retaliation against Bernato, pursuant to NYLL § 215.

d. An order of Judgment stating that Bernato is entitled to Liquidated Damages under provisions of the New York Labor Law;

e. An order of Judgment for Special Damages for Defendant' prima facie tort; AND

f. That the Court award any other legal and equitable relief as this Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

82. Bernato demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated this 2nd day of March, 2015, and respectfully submitted by:

**Dale J. Morgado, Esq.**
Morgado, PA
263 Tresser Blvd.
Suite 952
Stamford, Connecticut 06901
T: (855) 899-9121
F: (855) 499-9191
Email: djm@morgado.us

*Attorney for the Plaintiff*