UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
ANTHONY BERNATO, :
                Plaintiff, :
                -v- :
ARTHUR J. GALLAGHER & CO., :
                Defendant. :    15-cv-1544 (KBF)
------------------------------------------------------------------ X    OPINION & ORDER
ARTHUR J. GALLAGHER & CO., :
                Counterclaim-Plaintiff, :
                -v- :
ANTHONY BERNATO, :
                Counterclaim-Defendant. :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 5, 2015

KATHERINE B. FORREST, District Judge:

      Plaintiff Anthony Bernato initially commenced this action against defendant Arthur J. Gallagher & Co. ("Gallagher") alleging, inter alia, that his former employer, Hagedorn & Co. ("Hagedorn"), which was acquired by Gallagher in September 2014, withheld compensation and terminated him in retaliation for complaining about the withholding of compensation. (ECF No. 1.) On April 15, 2015, Gallagher filed an Answer and brought counterclaims against Bernato, alleging, inter alia, that he failed to adhere to a covenant not to compete that Gallagher acquired the right to enforce when it purchased Hagedorn. (ECF No. 9.)

Presently before the Court are the parties' cross-motions to dismiss each other's claims. Gallagher has also moved for leave to amend its Answer to add an affirmative defense under the Statute of Frauds. For the reasons that follow, Gallagher's motion to dismiss the Complaint is GRANTED; its motion for leave to amend its Answer is accordingly DENIED as moot. Bernato's motion to dismiss Gallagher's counterclaims is DENIED.

I.   BACKGROUND

   A.   Factual Allegations[1]

In November 2008, Bernato began working at Hagedorn, an insurance company, as a sales producer with the title of "Director." (Compl. ¶¶ 2, 21.) His role did not include any supervisory duties. (Compl. ¶ 4.) Bernato's offer of employment included compensation of $75,000 annually, plus a commission of 70% of all monies earned in excess of $107,000 worth of new business that he brought to Hagedorn. (Compl. ¶ 22.) Bernato was hired because of his ability to secure large accounts, which Hagedorn promised Bernato it could handle. (Compl. ¶¶ 5, 23.)

On November 3, 2008, Bernato executed a Confidentiality of Information Agreement and Covenant Not to Compete. (Answer ¶ 95; Sciara Aff., Ex. B, ECF No. 17-2.) That agreement states, in pertinent part:

> The Employee agrees that if Employee's employment with the Employer terminates for any reason whatsoever whether it be by either the act of the Employer or Employee, Employee covenants and agrees that for a period of two (2) years after such termination (the "Non-Compete Period"):

---

[1] The following facts are alleged in Bernato's Complaint (ECF No. 1 ("Compl.")), Gallagher's Answer and Counterclaims (ECF No. 9 ("Answer")), and documents attached to or incorporated therein by reference.

> (i) Employee shall not in any capacity or manner whatsoever either directly or indirectly solicit, sell to, divert, serve, accept or receive insurance agency, brokerage or consulting business from any customers, assureds or accounts.

(Sciara Aff., Ex. B ¶ 2.)

During his first several months at Hagedorn, Bernato worked in excess of forty hours per week but allegedly never received any compensation for those hours. (Compl. ¶ 3.) By mid-2009, Bernato successfully solicited and secured several large accounts, including the New York Times, Moody's, MacAndrews & Forbes, and Time Warner. (Compl. ¶ 5.) Hagedorn, however, was allegedly ill equipped to handle these large accounts and therefore turned them down, damaging Bernato's reputation in the insurance brokerage business. (Compl. ¶ 24.)

Bernato also brought in other accounts in 2009, but Hagedorn adopted a policy of taking accounts that Bernato had secured and giving them to other Hagedorn producers to manage. (Compl. ¶ 25.) As Bernato continued to bring in clients, other Hagedorn employees primarily continued to divert what should have been Bernato's accounts—and the commissions associated with them—to other sales producers. (Compl. ¶ 25.)

Bernato made repeated demands for his compensation in the form of commissions. (Compl. ¶ 27.) After months of making such requests, on August 26, 2014, Bernato sent a letter to Hagedorn's chief executive officer (copying its president and legal counsel), demanding his compensation. (Compl. ¶ 28.) Bernato was subsequently called into a meeting and was told he would be compensated when Hagedorn's sale to Gallagher was complete. (Compl. ¶ 29.) On September 10,

3

2014, Bernato was locked out of his office and escorted out of the building. (Compl. ¶ 30.)

Gallagher alleges that, also on September 10, 2014, Bernato executed a Separation Agreement and General Release (the "Release") with Hagedorn in which, in exchange for six weeks' salary from Hagedorn, he "knowingly and voluntarily release[d] and forever discharge[d] [Hagedorn] of and from any and all claims, known and unknown, which [he has] . . . against [Hagedorn] . . . [and its] successors." (Answer ¶ 98; Sciara Aff., Ex. C ¶ 8, ECF No. 17-3.) Bernato counters that the Release is a forgery. (Compl. ¶¶ 48-49.)

On September 16, 2014, Gallagher acquired Hagedorn and executed an Agreement and Plan of Reorganization (the "Purchase Agreement"). (Answer ¶ 99; Sciara Aff., Ex. D ("Purchase Agreement"), ECF No. 17-4.) As part of the sale, Hagedorn agreed to sell its client accounts and assets to Gallagher; however, any potential claims that might be brought by Bernato were specifically excluded from the transaction. (Answer ¶ 100). The Purchase Agreement provides that:

> Neither Gallagher nor [Gallagher's subsidiary] shall assume any liabilities of Seller other than the Assumed Liabilities (such non-Assumed Liabilities shall be referred to herein as "Excluded Liabilities"). Without in any manner affecting the limitations on the Assumed Liabilities but rather to identify more particularly certain obligations of Seller which are Excluded Liabilities not to be assumed by [Gallagher's subsidiary] on the Closing Date, it is agreed that Subsidiary shall not assume nor be liable for, and Seller expressly agrees to remain liable for the following described liabilities, obligations, contracts, and commitments . . .

> (vii) Any other debt, obligation, contract or liability of the Stockholder or Seller (or its officers or directors) set forth in Paragraph 2(b) of the Disclosure Schedule which Gallagher has not expressly agreed to assume . . . .

(Purchase Agreement § 2(b).) The Disclosure Schedule specifically lists the "Bernato Claim" in Schedule 2(b) as one of the liabilities not assumed by Gallagher. (Purchase Agreement Sched. 2(b).) The Purchase Agreement also provides that Hagedorn's stockholders were to be given voting stock in Gallagher:

> . . . [Gallagher's subsidiary] shall acquire from [Hagedorn] and [Hagedorn] shall transfer to [Gallagher's subsidiary] substantially all of the assets, property and business of [Hagedorn], subject to certain liabilities, solely in exchange for voting stock of Gallagher in exchange for the consideration recited herein . . .

(Purchase Agreement at 1.)

Bernato alleges that after his termination, Hagedorn interfered with his efforts to find employment elsewhere, including by calling his current employer. (Compl. ¶ 12.) Gallagher alleges that after Bernato's termination, he utilized confidential information and client relationships he obtained as a Hagedorn employee to acquire and service Woodgate Village Condominium, Inc. ("Woodgate") as a client, without Hagedorn's or Gallagher's consent. (Answer ¶¶ 107, 109-10.)

This action followed.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his

5

claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate. Twombly, 550 U.S. at 570.

When—as here—a Rule 12(b)(6) motion is filed after an answer to the complaint has already been filed, "the appropriate response is to treat such an untimely motion to dismiss as a motion for judgment on the pleadings under Rule 12(c)." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.

2001). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Id. "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (quotation marks and alteration omitted).

Although district courts are confined to the four corners of the pleadings when considering a motion to dismiss under Rule 12(c), a "district court may consider . . . documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken." Daniels ex rel. Daniels v. Comm'r of Soc. Sec., 456 F. App'x 40, 41 (2d Cir 2012) (summary order). Even if a document is not incorporated into a pleading by reference, a district court "may nevertheless consider it where the pleadings rely 'heavily upon its terms and effect, thereby rendering the document integral to the pleadings.'" Id. (quoting DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)) (alteration omitted). The consideration of materials extraneous to the complaint is appropriate if the plaintiff has "actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

7

B.  Successor Non-Liability

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."[2] New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). However, under New York law "a buyer of a corporation's assets will be liable as its successor if: '(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.'" Id. (quoting Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245 (1983)). "[W]here an asset purchase agreement states expressly that the seller, rather than the purchaser, is to be responsible for certain obligations and liabilities, such obligations and liabilities cannot be found to have been expressly or impliedly assumed by the purchaser." Riverside Mktg., LLC v. SignatureCard, Inc., 425 F. Supp. 2d 523, 535-36 (S.D.N.Y. 2006) (citing Heights v. U.S. Elec. Tool Co., 138 A.D.2d 369, 370 (2d Dep't 1988)).

C.  Enforceability of a Covenant Not to Compete

Because there are "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood," Am. Fed. Grp., Ltd. V. Rothenberg, 136 F.3d 897, 909 (2d Cir. 1998), New York courts have "rigorously examined and enforced [restrictive covenants] only to the extent necessary to protect the employer from unfair competition which stems from the employee's use

---

[2] The parties do not dispute that New York law governs all claims at issue in this litigation.

8

or disclosure of trade secrets or confidential customer lists, or confidential customer information, to protect the good will of the employer's business, or perhaps when the employer is exposed to special harm because of the unique nature of the employee's services." Am. Inst. of Chem. Eng'rs v. Reber-Friel Co., 682 F.2d 382, 387 (2d Cir. 1982) (quotation marks and citations omitted); see also Singas Famous Pizza Brands Corp. v. New York Advertising LLC, 468 F. App'x 43, 45 (2d Cir. 2012) (summary order) ("Under New York law, a restrictive covenant is rigorously examined and only enforced if it is reasonable in terms of its time, space or scope and not oppressive in its operation." (quotation marks and alterations omitted)). To determine whether a covenant not to compete is reasonable and thus enforceable, courts employ a three-prong test: (1) the restrictive covenant is no greater than is required for the protection of the legitimate interest of the employer; (2) the restrictive covenant does not impose undue hardship on the employee; and (3) the restraint on competition is not injurious to the public. Frantic, LLC v. Konfino, No. 13 Civ. 4516(AT), 2013 WL 5870211, at *2 (S.D.N.Y. Oct. 30, 2013) (citing BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999)).

Even if a covenant not to compete is unreasonable, it may still be enforceable under the employee choice doctrine, which "applies in cases where an employer conditions receipt of postemployment benefits upon compliance with a restrictive covenant." Morris v. Schroder Capital Mgmt. Int'l, 7 N.Y.3d 616, 620-21 (2006); see Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 254 (2d Cir. 2002). "Where the employer terminates the employment relationship without cause, 'his action

necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer's ability to impose a forfeiture.'" Morris, 7 N.Y.3d at 621 (quoting Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 N.Y.2d 84, 89 (1979)). "[A]lthough a restrictive covenant will be enforceable without regard to reasonableness if an employee left his employer voluntarily, a court must determine whether forfeiture is 'reasonable' if the employee was terminated involuntarily and without cause . . . ." Morris, 7 N.Y.3d at 621 (citation omitted).

    D.    Tortious Interference

To state a tortious interference with contract claim under New York law, a plaintiff must allege: "(1) 'the existence of a valid contract between the plaintiff and a third-party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996)).

### III.    DISCUSSION

    A.    Gallagher's Motion to Dismiss Bernato's Claims[3]

Gallagher argues that Bernato's claims should be dismissed both because he disclaimed his right to bring this action by signing the Release,[4] and because

---

[3] Because Gallagher brought a Rule 12(b)(6) motion to dismiss after filing its Answer, the Court construes Gallagher's motion as a motion for judgment on the pleadings under Rule 12(c).

[4] The Court may appropriately consider the Release on this motion as it is specifically referred to in the Complaint (Compl. ¶ 48.). See Chambers, 282 F.3d at 153.

10

Gallagher did not acquire any liability Hagedorn may have to him.[5] While the Release does not provide sufficient grounds to dismiss Bernato's claims at this time, Gallagher is correct that in light of the terms of the Purchase Agreement, Bernato lacks a claim against Gallagher for commissions or other damages Hagedorn may owe him.

As to the Release, Bernato alleges that the Release is a forgery and provided a further explanation for this assertion upon the Court's request. While discovery could shed light on whether this document is, in fact, a forgery, and Gallagher could well be entitled to relief based on the Release at a later time, at this stage the Release is not grounds for dismissing Bernato's suit.

As set forth above, the Purchase Agreement provides that Hagedorn would remain liable for any debt, obligation, contract or liability set forth in the Disclosure Schedule accompanying the agreement. (Purchase Agreement § 2(b).) The Disclosure Schedule lists the "Bernato Claim" as one of the liabilities not assumed by Gallagher. (Purchase Agreement Sched. 2(b).) The Purchase Agreement therefore explicitly states that liability for Bernato's claim would not transfer from Hagedorn to Gallagher.

In light of this provision of the Purchase Agreement, it is apparent that none of the exceptions to New York's principle of successor non-liability apply. That

---

[5] Bernato argues that this Court may not consider the Purchase Agreement on this motion. However, Gallagher's acquisition of Hagedorn is referenced in the Complaint (see Compl. ¶¶ 17, 27, 29, 56, 59), and the Purchase Agreement is referenced in defendant's Answer and Counterclaims (see Answer ¶ 91). The Purchase Agreement is thus integral to the pleadings, and Bernato was on notice and had knowledge of it. The Court may therefore properly consider the Purchase Agreement on this motion. See Chambers, 282 F.3d at 153.

11

Hagedorn received voting stock in Gallagher in exchange for Hagedorn's transfer of its assets to Gallagher is of no consequence—Gallagher could not have expressly or impliedly assumed Hagedorn's liability as to Bernato's claims when the Purchase Agreement expressly disavowed any such assumption of liability.  See Riverside Mktg., 425 F. Supp. 2d at 535-36 (citing Heights, 138 A.D.2d at 370); Kretzmer v. Firesafe Prods. Corp., 24 A.D.3d 158, 158-59 (1st Dep't 2005); see also Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 470 (3d Cir. 2006) (Alito, J.).  Because Hagedorn specifically retained liability as to Bernato's claim, any claim plaintiff may have arising out of his employment with Hagedorn is appropriately directed at Hagedorn and not Gallagher.[6]  Accordingly, Gallagher's Rule 12(c) motion as to Bernato's claims is granted.

      B.      <u>Bernato's Motion to Dismiss Gallagher's Counterclaims</u>

           1.      <u>Enforceability of Bernato's Covenant Not to Compete</u>

The question the Court must resolve with regard to Bernato's motion is not whether his restrictive covenant is reasonable, but rather whether Gallagher has stated a plausible breach of contract claim.  Gallagher has done so—it alleges that Bernato signed a covenant not to compete with Hagedorn and that he breached the agreement by using confidential information and client relationships he obtained as

---

[6] While the Purchase Agreement governs the transfer or non-transfer of liability for Bernato's claims, to the extent Galagher's assumption of liability could arise from a consolidation or merger between Gallagher and Hagedorn, that exception to successor non-liability is not applicable here because of the lack of allegations of continuity of ownership.  See Cargo Partners AG v. Albatrans, Inc., 352 F.3d 41, 46-47 (2d Cir. 2003).  Further, although Gallagher's Answer and Counterclaims put Bernato on notice of the provision of the Purchase Agreement regarding non-transfer of liability for Bernato's claims, Bernato has failed to set forth any allegations or arguments suggesting that the provision at issue was legally ineffective.

12

a Hagedorn employee to obtain Woodgate Village Condominium, Inc. as a client, causing Gallagher damages.

Because Gallagher has stated a plausible breach of contract claim, Bernato's motion to dismiss Gallagher's first counterclaim is denied.

    2.    <u>Tortious Interference</u>

Gallagher has sufficiently pled a tortious interference claim, and accordingly Bernato's motion to dismiss Gallagher's second counterclaim is denied. Gallagher alleges that (1) Hagedorn had a valid contract with Woodgate, and Gallagher assumed that contract in its purchase of Hagedorn's assets (Answer ¶¶ 100, 124); (2) Bernato had knowledge of that contract (Answer ¶ 125); (3) Bernato deliberately interfered with Woodgate's relationship with Hagedorn/Gallagher and convinced Woodgate to breach its contract (Answer ¶¶ 127-28); (4) Woodgate breached its contract with Gallagher (<u>see</u> Answer ¶¶ 128-29); and (5) as a result of that breach, Gallagher suffered damages (Answer ¶ 131). This is sufficient to state a claim for tortious interference. Although the parties dispute the meaning of the Hagedorn-Woodgate contract, the Court is unable to dispositively interpret the contract at this stage of the case.

    C.    <u>Defendant's Request for Leave to Amend Answer</u>

In its memorandum of law opposing plaintiff's motion to dismiss the counterclaims and in support of its cross-motion to dismiss the Complaint, Gallagher requested leave to amend its Answer to include an affirmative defense under the Statue of Frauds if the Court were to deny its cross-motion. Because the

Court grants Gallagher's cross-motion to dismiss the Complaint, Gallagher's motion for leave to amend its Answer is denied as moot.

IV.   CONCLUSION

For the reasons set forth above, Gallagher's motion to dismiss the Complaint is GRANTED, Gallagher's request for leave to amend its Answer is DENIED as moot, and Bernato's motion to dismiss Gallagher's counterclaims is DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 11 and 15.

SO ORDERED.

Dated:     New York, New York
           August 5, 2015

*[signature]*

KATHERINE B. FORREST
United States District Judge